UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KERRY SMITH,

                Plaintiff,

  v.

MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,

                Defendant.

CASE NO. 10-cv-5522-JRC

ORDER

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13 (see also Notice of Initial Assignment to a U.S. Magistrate Judge and Consent Form, ECF No. 4; Consent to Proceed Before a United States Magistrate Judge, ECF No. 10). This matter has been fully briefed (see ECF Nos. 14, 15, 19).

After considering and reviewing the record, the undersigned finds that the Administrative Law Judge did not evaluate properly the opinions provided by Nurse Mary Langley, ARNP, and did not evaluate properly plaintiff's testimony and credibility. The Administrative Law Judge also did not evaluate properly the evidence from acceptable medical sources, including that from treating psychiatrist, Dr. Timothy Truschel, M.D., and the evidence from examining

ORDER - 1

psychologists, Drs. Dan Neims, Terilee Wingate and Brett C. Trowbridge. Therefore, this matter is REVERSED and REMANDED to the administration for further consideration.

## BACKGROUND

Plaintiff, KERRY SMITH, was twenty-one years old on her amended disability onset date of May 1, 2006[1] (see Tr. 128). Plaintiff quit school in eighth grade allegedly due to difficulties being around and talking to people (see Tr. 31). Plaintiff testified that she received poor grades in school (see Tr. 31-32). Nevertheless, she acquired her GED in 2004 (see Tr. 27). As of her hearing date of April 30, 2009, plaintiff lived with her father, and her child, who was born in March, 2009 (see id.).

Plaintiff worked for three days in 2007 cleaning a Lowes store for Labor Ready (Tr. 28). She testified at her hearing that she quit this job because she "couldn't really do it" (id.). She testified that she was not able to do this job because of her difficulties being around people, because she "had trouble concentrating on doing the work," and because of other difficulties she was not able to specify at her hearing because she was interrupted by the ALJ (see Tr. 28-29). Plaintiff testified that she has difficulty with interviews (Tr. 29-30), she does not "like to leave the house that much, and [she is] scared to talk to people" (Tr. 30). The job with Labor Ready was plaintiff's only reported job (Tr. 32), although it is unclear whether or not she ever was self-employed (see Tr. 12, 47-48, 110).

Although some earnings were reflected on plaintiff's earnings report (see Tr. 110), plaintiff testified that these are not her earnings (see Tr. 47-48). Plaintiff does not appear to have any substantial gainful activity since the amended onset date (see Tr. 12, 132-33).

---

[1] Pursuant to the Social Security Act and the relevant federal regulations, payment may be made for disabled child's insurance benefits if the claimant is 18 years old or older and has a disability that began before attaining age 22. 20 C.F.R. § 404.350(a)(5); see also May v. Astrue, 2010 U.S. Dist. LEXIS 111729 at *2 n.1 (W.D.Wash. 2010) (J. Strombom).

ORDER - 2

## PROCEDURAL HISTORY

Plaintiff filed applications for Disabled Adult Child and Title XVI Supplemental Security Income disability benefits on January 11, 2007, (see Tr. 108, 109), alleging disability onset of October 16, 2006 (see Tr. 128, 132). Plaintiff amended her disability onset date at her hearing to May 1, 2006 (see Tr. 10, 52-53). Her claims were denied initially (see Tr. 55, 56), and following reconsideration (see Tr. 57, 58). On April 30, 2009, plaintiff's requested hearing (see Tr. 74, 75-76) was held before Administrative Law Judge Mattie Harvin-Wood (hereinafter "the ALJ") (see Tr. 20-53).

On June 25, 2009, the ALJ issued a written decision concluding that plaintiff "has not been under a disability, as defined in the Social Security Act, from May 1, 2006, through the date of this decision" (Tr. 19; see also Tr. 7-9, 10-19). On July 2, 2010, the Appeals Council denied plaintiff's request for review of the ALJ's written decision (Tr. 1-3), making the April 30, 2009 written decision by the ALJ the final agency decision subject to judicial review. See 20 C.F.R. § 404.981.

On August 6, 2010, plaintiff filed a complaint with the District Court, seeking review of the April 30, 2009 written decision by the ALJ (see ECF No. 3). In her opening brief, plaintiff contends, among other things, that the ALJ failed to evaluate properly: (1) the opinions offered by Nurse Mary Langley, ARNP, (2) plaintiff's testimony, and (3) the medical evidence, including the medical evidence offered by treating psychiatrist, Dr. Timothy Truschel, M.D., as well as that offered by examining psychologists, Drs. Dan Neims, Terilee Wingate and Brett C. Trowbridge (see ECF No. 14, pp. 12-13). On January 18, 2011, defendant filed a brief with the

Court, contending that the ALJ's evaluation of the evidence was proper (see ECF No. 15, p. 4). On February 8, 2011, plaintiff filed a reply brief (ECF No. 19).

## STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (*citing* Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995)). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing* Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting* Davis v. Heckler, 868 F.2d 323, 325-26 (9th Cir. 1989)); see Richardson v. Perales, 402 U.S. 389, 401 (1971). The Court "'must independently determine whether the Commissioner's decision is (1) free of legal error and (2) is supported by substantial

evidence." See Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing* Moore v. Comm'r of the Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

However, "regardless whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for h[is] decision and [the courts] confine our review to the reasons supplied by the ALJ." Steele v. Barnhart, 290 F.3d 936, 941(7th Cir. 2002) (*citing* SEC v. Chenery Corp., 318 U.S. 80, 93-95 (1943); Johnson v. Apfel, 189 F.3d 561, 564 (7th Cir. 1999); Sarchet v. Chater, 78 F.3d 305, 307 (7th Cir. 1996)); see also Griemsmann v. Astrue, 147 Soc. Sec. Rep. Service 286, 2009 U.S. Dist. LEXIS 124952 at *8, (W.D. Wash. 2009) (J. Theiler) (*citing* Blakes v. Barnhart, 331 F.3d 565, 569 (7th Cir. 2003)), *adopted and remanded by* 147 Soc. Sec. Rep. Service 286, 2009 U.S. Dist. LEXIS 98985 (2009) (J. Zilly).

## DISCUSSION

1. <u>The ALJ failed to evaluate properly the opinion evidence provided by Nurse Practitioner Mary Langley</u>.

Plaintiff argues that the decision by the ALJ "fails to give proper consideration to the opinions of Mary Langley, ARNP" (<u>see</u> Plaintiff's Opening Brief, ECF No. 14, p. 13). Defendant does not respond to this argument (<u>see</u> Defendant's Brief, ECF No. 15, pp. 1-12).

Pursuant to the relevant federal regulations, in addition to "acceptable medical sources," that is, sources "who can provide evidence to establish an impairment," 20 C.F.R. § 404.1513 (a), there are "other sources," such as friends and family members, who are defined as "other non-medical sources," 20 C.F.R. § 404.1513 (d)(4), and "other sources" such as nurse

practitioners and naturopaths, who are considered other medical sources[2], 20 C.F.R. § 404.1513 (d)(1). See also Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1223-24 (9th Cir. 2010) (*citing* 20 C.F.R. § 404.1513(a), (d), (d)(3)).

An ALJ may disregard opinion evidence provided by "other sources," characterized recently by the Ninth Circuit as "lay testimony," "if the ALJ 'gives reasons germane to each witness for doing so." Turner, supra, 613 F.3d at 1224 (*citing* Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001)); see also Van Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). This is because "[i]n determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1053 (9th Cir. 2006) (*citing* Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993)).

Recently, the Ninth Circuit characterized lay witness testimony as "competent evidence," again concluding that in order for such evidence to be disregarded, "the ALJ must provide 'reasons that are germane to each witness.'" Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (*quoting* Van Nguyen, supra, 100 F.3d at 1467).

Nurse Mary E. Langley, ARNP (Advanced Registered Nurse Practitioner) (hereinafter "Nurse Langley") evaluated plaintiff's medical records and examined plaintiff on May 10, 2007 (see Tr. 286-89). She noted plaintiff's self-reported history, as well as noting plaintiff's self-reported symptoms (Tr. 286-87). Nurse Langley also conducted a mental status examination (Tr. 288). Nurse Langley observed plaintiff's "quite restricted and withdrawn" affect, as well as her "moderate psychomotor slowing" (id.). Nurse Langley also characterized plaintiff's speech as "very soft and latent," and noted that plaintiff made "very few spontaneous comments" (id.).

---

[2] "Other sources" specifically delineated in the relevant federal regulations also include "educational personnel," see 20 C.F.R. § 404.1513(d)(2), and public and private "social welfare agency personnel," see 20 C.F.R. § 404.1513(d)(3).

Nurse Langley assessed plaintiff as "socially isolated," with a history of "at least two traumatic incidents" (id.). Nurse Langley indicated her assessment that plaintiff suffered from major depression, as well as provisional diagnoses of social phobia, and posttraumatic stress disorder (id.). She assigned plaintiff a GAF (Global Assessment of Functioning) of 41 (id.).

The ALJ failed to discuss the opinions by Nurse Langley. This was error. An ALJ may disregard opinion evidence provided by "other sources," such as other medical sources like Nurse Langley, "if the ALJ 'gives reasons germane to each witness for doing so." Turner, supra, 613 F.3d at 1224. Since the ALJ failed to discuss Nurse Langley's opinions, and did not give any reason to reject her opinions, these opinions should not have been disregarded without further explanation. See id. This is especially the case where, as here, the ALJ made findings contrary to those of the "other source" (see Tr. 15, 288). Here, the ALJ found that the "mental status exam also has shown appropriate mood and affect," while Nurse Langley assessed plaintiff's mood and affect as "quite restricted and withdrawn" (see Tr. 15, 288). In addition, the Court concludes that much of the opinion evidence from the "other source," Nurse Langley, was significant probative evidence, and as such, it should not have been rejected without explanation. See Flores v. Shalala, 49 F.3d 562, 570-71 (9th Cir. 1995) (*quoting* Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984)); See also Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981). The "ALJ's written decision must state reasons for disregarding [such] evidence." Flores, supra, 49 F.3d at 571.

For the above stated reasons, the Court concludes that the ALJ committed legal error by failing to discuss the opinions by Nurse Langley, and by failing to give reasons explaining why her opinions were rejected.

2. <u>The ALJ failed to evaluate properly plaintiff's testimony and credibility</u>.

If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. <u>Sample v. Schweiker</u>, 694 F.2d 639, 642 (9th Cir. 1999) (*quoting* <u>Waters v. Gardner</u>, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing* <u>Calhoun v. Bailar</u>, 626 F.2d 145, 150 (9th Cir. 1980))).  An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th Cir. 1989) (*citing* 42 U.S.C. § 423(d)(5)(A)). Even if a claimant "has an ailment reasonably expected to produce *some* pain; many medical conditions produce pain not severe enough to preclude gainful employment." <u>Fair</u>, <u>supra</u>, 885 F.2d at 603.

Nevertheless, the ALJ's credibility determinations "must be supported by specific, cogent reasons." <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998) (citation omitted). In evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "'must specifically identify what testimony is credible and what evidence undermines the claimant's complaints.'" <u>Greger v. Barnhart</u>, 464 F.3d 968, 972 (9th Cir. 2006) (*quoting* <u>Morgan v. Comm'r of Soc. Sec. Admin.</u>, 169 F.3d 595, 599 (9th Cir. 1999)); <u>Reddick</u>, <u>supra</u>, 157 F.3d at 722 (citations omitted); <u>Smolen v. Chater</u>, 80 F.3d 1273, 1284 (9th Cir. 1996) (citations omitted). The decision of the ALJ should "include a discussion of why reported daily activity limitations or restrictions are or are not reasonably consistent with the medical and other evidence." SSR 95-5p 1995 SSR LEXIS 11. "[I]f a claimant 'is able to spend a *substantial part* of her day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations.'" <u>Vertigan v. Halter</u>, 260 F.3d 1044, 1049 (9th Cir. 2001) (*quoting* <u>Morgan,</u> 169 F.3d at 600) (emphasis added in <u>Vertigan</u>).

The determination of whether to accept a claimant's testimony regarding subjective symptoms requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; Smolen, 80 F.3d at 1281 (*citing* Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)). First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); Smolen, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms "based solely on a lack of objective medical evidence to fully corroborate the alleged severity" of the symptoms. Bunnell v. Sullivan, 947 F.2d 341, 343, 346-47 (9th Cir. 1991) (*en banc*) (*citing* Cotton, 799 F.2d at 1407). Absent affirmative evidence that the claimant is malingering, the ALJ must provide specific "clear and convincing" reasons for rejecting the claimant's testimony. Smolen, 80 F.3d at 1283-84; Reddick, 157 F.3d at 722 (*citing* Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996); Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

The ALJ concluded that plaintiff's subjective complaints and alleged limitations were "not fully persuasive" (Tr. 17-18). The ALJ provided a number of reasons for this conclusion (see Tr. 13-16). When assessing whether or not plaintiff had an impairment, or a combination of impairments, that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1, the ALJ noted that although plaintiff "reported that she rarely leaves the house, she has described daily activities that are relatively intact, varied and sustained" (see Tr. 13). However, in support of this assessment, the ALJ cited daily activities such as having a driving license, showering daily, and doing dishes, laundry and vacuuming, as well as handling her own finances (see id.). The listed activities of daily living do not lead necessarily to the conclusion that plaintiff's daily activities are intact, varied and sustained, especially as plaintiff

testified that her dad does most of the cooking, cleans the bathroom, and takes out the trash -- none of which is mentioned by the ALJ (see Tr. 13, 40).

Second, it is unclear how any of these activities contradict plaintiff's statement that she rarely leaves the house, as all of these activities can be engaged in without leaving the house. The only other activities of daily living mentioned by the ALJ in this context are that plaintiff "drives, uses public transportation, and grocery shops," as well as takes her baby to medical appointments and checkups (see Tr. 13).

Regarding these other activities of daily living specified by the ALJ, plaintiff testified at her hearing that usually she goes with her dad to the grocery store, and that she drives only "once in a while," further specifying that she maybe drives as often as once a week (Tr. 41). When the ALJ again probed this issue, asking plaintiff how often she would go outside of the house, plaintiff again estimated that she left the house maybe once a week at the most (see Tr. 42). In addition, regarding taking public transportation, plaintiff testified that she does not take public transportation, as she prefers someone to drive her, although she admitted to taking it "once in a while" (see Tr. 41-42). Based on a review of the relevant record, and based on the aforesaid reasons, the Court concludes that the ALJ did not support adequately the finding that plaintiff had only "mild" restrictions[3] on her activities of daily living (see Tr. 13).

Similarly, the ALJ concluded that plaintiff only had moderate difficulties in social functioning, in part because "she uses public transportation" (see Tr. 13-14). In addition, with

---

[3] Physicians and psychologists often use standard forms to assist them with the assessment of patients. These standard forms often list common types of symptoms or limitations, with check boxes for the evaluator to indicate whether the patient's symptoms or limitations are "none," "mild," "moderate," "marked," or "severe" (see, e.g., Tr. 180-81). Similarly, when a claimant files for social security benefits, her medical records are requested, and along with the request often is a form for the doctor or psychologist to fill out, with the same check boxes by which the evaluator can indicate his assessment of plaintiff's symptoms or limitations in a standardized format (see id.). In addition, the Residual Functional Capacity analyses typically conducted by state agency physicians or psychologists generally include the use of standard forms, requiring the evaluator to indicate the patient's level of functional limitation by checking boxes labeled "not significantly limited," "moderately limited," "markedly limited," "no evidence of limitation in this category," or "not ratable on available evidence" (see, e.g., Tr. 199-200).

respect to concentration, persistence and pace, the ALJ concluded that plaintiff had only mild difficulties (see Tr. 14). In support of this conclusion, the ALJ cited selected results from plaintiff's mental status examinations which tested plaintiff's cognitive abilities, such as memory and concentration abilities (see id.). The ALJ does not appear to have looked at any of plaintiff's test results following mental status examination which were sensitive to plaintiff's limitations regarding pace, before concluding that her limitations in this area were "mild" (see id.). This was legal error, especially since examining psychologist, Dr. Brett C. Trowbridge, Ph.D., (hereinafter "Dr. Trowbridge"), who conducted a mental status examination on May 4, 2006, specifically tested plaintiff's limitations regarding pace and concluded that her performance was "poor" (see Tr. 181, 183-86 (45 seconds and 154 seconds on Trails A and B respectively)). The Court also notes that Dr. Trowbridge assessed plaintiff's mental status examination results to indicate that she was "not malingering" (Tr. 181).

The Court concludes that the ALJ committed legal error in concluding that plaintiff had only mild difficulties with respect to concentration, persistence or pace, without mentioning the significant probative evidence from an examining psychologist who assessed that her performance on an examination which tested specifically for limitations regarding pace was "poor" (see Tr. 14, 181). See Flores, supra, 49 F.3d at 571.

The ALJ, when specifically assessing plaintiff's credibility, supported the conclusion that plaintiff's testimony was "not fully persuasive," by concluding that plaintiff's "mental health treatment has not been as consistent as one would expect, given the allegation of disabling symptoms" (see Tr. 15, 18). In support of this assessment, the ALJ noted that her father "required her to pursue mental health treatment," and that plaintiff had "several no-shows for

appointments" (Tr. 15). The ALJ also noted that one of plaintiff's treatment notes indicated that she was "having a hard time making her appointments" (id.).

When a mental illness is involved, assuming that a failure to comply with prescribed treatment suggests a willful failure to comply with prescribed treatment can be illogical. This is in part because a person suffering from a mental illness may not realize that she needs her medication, or she may not even realize that her "condition reflects a potentially serious mental illness." Van Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996)). "'[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'" Id. (*quoting with approval*, Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir. 1989)).

Courts have also noted that when a person suffers from a mental illness, especially severe ones such as the severe mood disorder, generalized anxiety disorder, social phobia, personality disorder and impulse control disorder suffered by plaintiff here, (see Tr. 12), and the mentally ill person does not have the requisite insight into her condition, or does not have the memory and focus to have the ability to take a medication three times a day, or make it to her counseling sessions, this fact actually can indicate a greater severity of mental incapacity. See Van Nguyen, supra, 100 F.3d at 1465; see also Blankenship, supra, 874 F.2d at 1124. In addition, according to Social Security Ruling, (hereinafter "SSR"), SSR 96-7, "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7, 1996 SSR LEXIS 4, at *21-*22. Plaintiff had a severe social phobia and a severe anxiety disorder, as assessed by the ALJ (see Tr.

12), and she reported that she rarely leaves the house, a fact also referenced by the ALJ (see Tr. 13). The ALJ should have considered these factors as potential explanations as to why she may have missed her appointments, or declined to participate in group therapy, before drawing any inferences about her "symptoms and their functional effects from a failure to seek or pursue regular medical treatment." SSR 96-7 1996 SSR LEXIS 4, at *21-*22. Therefore, the ALJ's conclusion that plaintiff's mental health treatment was not consistent does not provide significant support for the conclusion that plaintiff's testimony was not persuasive. See id.; see also Van Nguyen, supra, 100 F.3d 1462.

The ALJ also concluded that when plaintiff "did receive treatment for her symptoms, it was relatively effective" (Tr. 15). The ALJ discounted plaintiff's report from her treatment notes that "her Wellbutrin was not working," and instead emphasized that "treatment notes indicate that her dosage was insufficient, and her medication was adjusted to include morning and afternoon doses" (see Tr. 16). Although the ALJ noted that in July, 2008 plaintiff reported that she was having good results with the Wellbutrin, the ALJ failed to mention that plaintiff testified specifically that it helped only a little bit, and that it wasn't really working (see Tr. 39). When the ALJ questioned plaintiff at her hearing about this, asking her what she was expecting from her medication, she responded that she was expecting it to "elevate my mood to make me more" happy (Tr. 39). The ALJ does not mention any of this significant probative evidence before concluding that when plaintiff received treatment for her symptoms, it relatively was effective (see Tr. 15-16). See also Flores, supra, 49 F.3d at 571.

Finally, the ALJ concluded that plaintiff's "daily activities are inconsistent with the report of disabling symptoms and limitations" (Tr. 16). Again, the ALJ noted that plaintiff showers daily, does dishes (even though she testified that she does them "a little bit"), uses

ORDER - 13

public transportation (even though she testified that she uses it only "once in a while") and grocery shops (even though she testified that she usually goes with her father, and only "sometimes" tries to go on her own) (see Tr. 40, 41, 42). The ALJ also noted that plaintiff is the primary caregiver for her son, has a boyfriend, reads novels and magazines, and on one occasion her mood improved enough to go to a local county fair, and to the ocean and beach with her sister (see Tr. 16). Although a claimant's allegations potentially may be discredited when the ALJ makes a specific finding that the "claimant 'is able to spend a *substantial part* of her day engaged in pursuits involving the performance of physical functions that are transferable to a work setting,'" the ALJ made no such specific finding here. See Vertigan, supra, 260 F.3d at 1049 (*quoting* Morgan, supra, 169 F.3d at 600) (emphasis added in Vertigan).

Because the ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms" (see Tr. 15), and because plaintiff was found not to be a malingerer (see Tr. 181), the ALJ here needed to provide specific "clear and convincing" reasons for rejecting plaintiff's testimony. See Smolen, supra, 80 F.3d at 1283-84. Although the Court notes that the ALJ mentioned other evidence in support of his adverse credibility finding, based on a review of the relevant record, and based on the reasons stated above, the Court concludes that the ALJ here did not provide "clear and convincing" reasons for rejecting plaintiff's testimony. See id. Therefore, this legal error provides an independent basis to reverse and remand this matter to the administration for further consideration.

3.   <u>The ALJ failed to evaluate properly the medical evidence, including the report by treating psychiatrist, Dr. Timothy Truschel, M.D., as well as the reports offered by examining psychologists, Drs. Dan Neims, Terilee Wingate and Brett C. Trowbridge</u>.

"A treating physician's medical opinion as to the nature and severity of an individual's impairment must be given controlling weight if that opinion is well-supported and not inconsistent with other substantial evidence in the case record." <u>Edlund v. Massanari</u>, 253 F.3d 1152, 1157 (9th Cir. 2001) (*citing* SSR 96-2p, 1996 SSR LEXIS 9); <u>see also</u> 20 C.F.R. § 416.902 (nontreating physician is one without "ongoing treatment relationship"). The decision must "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the [] opinion." SSR 96-2p, 1996 SSR LEXIS 9. However, "[a] physician's opinion of disability 'premised to a large extent upon [plaintiff]'s own accounts of h[er] symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.'" <u>Morgan</u>, <u>supra</u>, 169 F.3d at 602 (*quoting* <u>Fair v. Bowen</u>, 885 F.2d 597, 605 (9th Cir. 1989) (*citing* <u>Brawner v. Sec. HHS</u>, 839 F.2d 432, 433-34 (9th Cir. 1988))).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995) (*citing* <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1396 (9th Cir. 1991); <u>Pitzer v. Sullivan</u>, 908 F.2d 502, 506 (9th Cir. 1990)); <u>see also</u> <u>Edlund v. Massanari</u>, 253 F.3d 1152, 1158-59 (9th Cir. 2001) ("the ALJ erred in failing to meet, either explicitly or implicitly, the standard of clear and convincing reasons required to reject an uncontradicted opinion of an examining psychologist") (*citing* <u>Lester</u>, <u>supra</u>, 81 F.3d at 830). Even if a treating or examining physician's

opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Lester, supra, 81 F.3d at 830-31 (*citing* Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995)). In addition, the ALJ must explain why her own interpretations, rather than those of the doctors, are correct. Reddick, supra, 157 F.3d at 725 (*citing* Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988)). However, the ALJ "need not discuss *all* evidence presented." Vincent on Behalf of Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (per curiam). The ALJ must only explain why "significant probative evidence has been rejected." Id. (*quoting* Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981)).

    a.   Treating psychiatrist, Dr. Timothy Truschel, M.D., (hereinafter "Dr. Truschel")

As characterized by the ALJ, Dr. Truschel "noted that [plaintiff] was 'decidedly stuck in contemplative mode' and that if she did not change her behaviors, she would not be able to lay her 'severe crippling anxiety' to rest" (see Tr. 17). One of the reasons given by the ALJ for the assignment of "little weight" to Dr. Truschel's opinion that plaintiff's anxiety was severe and crippling was that the ALJ found that it was based on plaintiff's self-report, which the ALJ characterized as "vague and inconsistent" (Tr. 17). Although Dr. Truschel characterized plaintiff as vague, the Court does not find any inconsistency in plaintiff's self-reported symptoms as reported to Dr. Truschel (see Tr. 255-56). The ALJ indicated that plaintiff's self-reported symptoms were inconsistent "as she indicated both that her depression had improved and her anxiety was down, but also that her depressive symptoms remained and she does not try to leave her house" (Tr. 17). There is nothing necessarily inconsistent in these self-reports, as plaintiff's depression may have been at a level of a ten out of ten, before she assessed that her depression improved to a level of a five out of ten, even though her depressive symptoms remained in effect.

The ALJ also assigned "little weight" to Dr. Truschel's opinion that plaintiff's anxiety was severe and crippling because the ALJ concluded that this opinion by Dr. Truschel was "inconsistent with the rest of the medical record" (Tr. 17). The ALJ does not explain what evidence in the "rest of the medical record" is inconsistent with the opinion by Dr. Truschel that plaintiff's anxiety was severe and crippling. Based on a review of the relevant record, the Court concludes that the ALJ's conclusion that Dr. Truschel's characterization of plaintiff's anxiety as severe and crippling is inconsistent with the rest of the medical record is not a finding with substantial evidence in the record as a whole. See Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1. This finding by the ALJ also does not provide substantial support for the ALJ's assignment of "little weight" to the opinion by Dr. Truschel.

Based on a review of the relevant record, and for the reasons stated above, the Court concludes that the ALJ did not evaluate properly the opinion by Dr. Truschel.

    b. <u>Examining psychologists, Dr. Dan Neims, Ph.D., (hereinafter "Dr. Neims"), Dr. Terilee Wingate, Ph.D., (hereinafter "Dr. Wingate"), and Dr. Trowbridge, Ph.D.</u>

The ALJ did not give great weight to opinions by examining psychologists, Drs. Neims, Wingate and Trowbridge because the opinions by all three of these examining psychologists regarding plaintiff's social limitations, and the opinions of two of them regarding plaintiff's cognitive limitations, were inconsistent with plaintiff's reported daily activities and her noted improvement with treatment (see Tr. 17).The Court already has discussed the legal error committed by the ALJ regarding the analysis of plaintiff's reported daily activities, as well as regarding plaintiff's alleged improvement with Wellbutrin treatment (see supra, section 2). In addition, the Court notes that the ALJ did not specify how plaintiff's reported daily activities were not consistent with any specific aspect of the medical opinion evidence offered by each of

these three examining psychologists. The Court concludes that the ALJ's conclusion that the opinions by these three examining psychologists regarding social and cognitive limitations were inconsistent in general with plaintiff's daily activities and her improvement with treatment does not provide substantial support for the assignment of "some, but not great weight" to these opinions (see Tr. 17). Although the ALJ also noted the proximity of Dr. Trowbridge's opinion to plaintiff's date of alleged disability onset, based on a review of the relevant record, the Court concludes that the ALJ failed to provide "specific and legitimate reasons that are supported by substantial evidence in the record" for the partial rejection of the opinions of examining psychologists, Drs. Neims, Wingate and Trowbridge. See Lester, supra, 81 F.3d at 830-31.

Based on a review of the relevant record, and based on the aforesaid reasons, the Court concludes that the ALJ failed to evaluate properly the medical evidence, thereby providing a third independent basis for reversal and remand of this matter to the administration for further consideration.

## CONCLUSION

After considering and reviewing the record, the undersigned finds that the ALJ committed legal error by not providing germane reasons to reject the opinions provided by Nurse Mary Langley, ARNP.  The ALJ also did not evaluate properly plaintiff's testimony and credibility by failing to provide clear and convincing reason to discount her credibility. Finally, the ALJ also did not evaluate properly the opinion evidence from acceptable medical sources, including treating psychiatrist, Dr. Timothy Truschel, M.D., and examining psychologists, Drs. Dan Neims, Terilee Wingate and Brett C.Trowbridge. Because of the specific errors committed by the ALJ, following remand, the Administrative Law Judge assigned to this matter should

1  evaluate the record anew as a whole, and should begin the sequential disability evaluation anew
2  at step two.
3       For these reasons, this matter is REVERSED and REMANDED to the administration for
4  further consideration.
5       Dated this 1st day of June, 2011.

       J. Richard Creatura
       United States Magistrate Judge